THOMAS CONROY *vs.* EQUITABLE ACCIDENT COMPANY.

FEBRUARY 9, 1906.

PRESENT: Douglas, C. J., Dubois and Blodgett, JJ.

(1)  *Form of Action.*

Assumpsit is not the appropriate action upon a policy of insurance under seal.

The objection that plaintiff has mistaken his action is not waived by submitting the case to the jury.

(2)  *Accident Insurance.  Release.  Waiver.*

*Semple:*  An "accident" policy was issued to plaintiff subject to conditions requiring that the duration of the sickness must exceed fourteen days;  that the first fourteen days of continuous sickness should constitute the first benefit week; that the policy did not cover disability resulting from tuberculosis, and that in case of disability caused by a cold the indemnity should not exceed one week.   Plaintiff claimed his disability for which he brought suit · arose from a cold, while his physician certified it to be pulmonary phthisis.   Plaintiff was continuously sick from January 9 to March 23 of the same year, and made claim for two weeks and three days indemnity.   He was paid for nine days by draft containing a release from all liability of the defendant, which release was duly executed by the authorized agent of plaintiff. Plaintiff claimed that both he and his agent, being ignorant, did not understand the effect of the release.   Plaintiff subsequently brought suit for ten weeks' indemnity.

*Held*, that plaintiff was bound by the release.

*Held*, further, that, even if plaintiff could avoid the release, he was suffering either from tuberculosis or a cold; and in either case defendant had paid him more than he was entitled to under the policy.

*Held*, further, that the acceptance of an advance premium by defendant, with knowledge that plaintiff was suffering from tuberculosis, did not render defendant liable for any disability caused by that disease; since a tuberculous policy holder was entitled while in good standing, to indemnity against accidents and insurable diseases.

ASSUMPSIT.   Heard on petition of defendant for new trial, and judgment ordered for defendant.

DUBOIS, J.   This is an action of assumpsit upon a "health and accident" policy of insurance, brought to recover the sum of $74.71 which the plaintiff claims the defendant owes him for disability caused by a sickness of ten weeks' duration, upon which the defendant had made one payment of $10.29, consisting of cash, $6.29, and a credit of $4.00 for the next premium due thereafter.   The action was brought in the District Court of the Sixth Judicial District, and upon the plaintiff's claim of jury trial was certified to the Common Pleas Division of the Supreme Court.   Upon trial there the plaintiff offered in evidence the policy under which the suit was brought, which disclosed the fact that it was a sealed instrument.   At the conclusion of the plaintiff's case the defendant moved for a nonsuit upon the ground that the action was improperly brought because assumpsit is not the appropriate remedy for the breach

of a specialty. The presiding justice denied the motion, and the defendant duly excepted thereto.

After verdict for the plaintiff for the amount claimed, the defendant filed its petition for a new trial upon the grounds that the verdict was against the law, the evidence, and the weight thereof; that the presiding justice erred in his instructions to the jury; that he erred in refusing to allow the introduction of testimony offered for the defendant and in admitting testimony offered on behalf of the plaintiff against the objection of the defendant; and that he erred in refusing to charge the jury as requested by the defendant.

(1)   Although the above-named exception to the refusal of the presiding justice to nonsuit the plaintiff was not made a ground of the defendant's petition for a new trial and is not alluded to in the brief in support of the same, we are of the opinion that the objection was a valid one and that the motion for a nonsuit should have been granted. "When the objection to the form of action does not appear on the face of the pleadings, it can only be taken as a ground of nonsuit." I Chit. Pl. 15th Am. ed. *198. "The objection that the plaintiff has mistaken his action is not waived by submitting the case to the jury. Advantage may be taken of the error at any stage of the trial." *Rathbun* v. *R. R. Co.*, 19 R. I. 463; *Slater* v. *Fehlberg*, 24 R. I. 574. "Debt and covenant are the appropriate form of common-law actions upon policies under seal. Assumpsit will not lie in such cases unless there is a new consideration, or unless permitted by statute." 11 Ency. Pl. & Pr. 377.

In the absence of a statute permitting it, assumpsit can not be maintained upon a contract under seal unless there is a subsequent agreement, founded upon some new consideration to pay the debt or perform the contract or its terms are varied by a subsequent simple contract or by other proceedings constituting an abandonment or waiver of the provisions of the sealed instrument. 4 Cyc. 323.

(2)   While it thus appears that the plaintiff can not recover in this form of action, nevertheless, as it has been urged in argument, it is important to consider if he has the right to recover in any

action under the facts of the case, and, if so, whether such right is absolute or conditional.

On the twelfth day of June, 1902, the defendant issued to the plaintiff, who was then thirty-six years of age, its policy of insurance which, if not lapsed or previously terminated, may remain in force until he shall attain the age of seventy years, in consideration of his promise to pay quarterly premiums thereon of four dollars each, whereby it insured the plaintiff against the results of bodily injury and for loss of time resulting from sickness, and agreed to pay him, in case of sickness, for the first eight weeks the sum of eight dollars per week, and various other sums in case of specified accidents, or, in the event of his death, $200 to his legal beneficiaries. The policy was issued and accepted subject to conditions making it the duty of the insured to notify the company within ten days of the commencement of his sickness; requiring that the duration of the sickness must exceed fourteen days; prescribing that the first fourteen days of continuous sickness shall constitute the first benefit week; providing that proof of the disability must be filed with the company within thirty days after the same shall have terminated; that the benefits of the policy do not extend to disability resulting from tuberculosis; and that in case of disability caused by a cold the weekly indemnity shall not exceed one week.

The plaintiff became sick and duly notified the defendant of the sickness, which began January 9, 1904, and lasted until March 23d of the same year. It was one continuous illness. For some reason, not clearly apparent, the plaintiff did not wait until after the termination of his disability to file his proof of claim for the same, but obtained the requisite blanks, caused them to be filled, and returned them to the defendant, all in the same month in which he was taken sick.

The plaintiff claims that his disability arose from a cold, while his attending physician in his proof of claim certified it to be "pulmonary phthisis." This is of little importance, however, in the consideration of the case at bar. Assuming that the claim of the plaintiff is correct, under the terms of the policy,

in case of disability caused by a cold, he would be entitled to indemnity not exceeding one week.

It appears from the communication from the general manager of the defendant company, which is incorporated with the indemnity claim No. 9,272, presented by the plaintiff to the defendant: "The fund from which benefits are paid is created by premium calls upon the members. Under the laws of Massachusetts no part of the benefit fund can be used for any other purpose except the payments of benefits and the expenses necessary to protect the members from fraudulent and unjust claims. The only interest which the management of the company has in this fund is to see that it is properly disbursed." The insured would, therefore, seem to be members of a mutual company in which a trust fund is created by premium calls upon the members, over which fund the officers of the company are trustees. If the plaintiff was disabled through tuberculosis, the trustees had no right to pay him anything; and if he suffered from disability caused by a cold, the officers had no authority to pay him for more than one week. He was paid nine days' indemnity at $8.00 per week, amounting to $10.29, by a draft for $6.29 and a receipt for $4.00 for the next premium due. But this sum was paid him upon the express terms and conditions contained in the following letter:

"BOSTON, February 4, 1904.

"MR. THOMAS CONWAY,

"136 Julian Street, Providence, R. I.

"DEAR SIR:—I am in receipt of the final blanks claiming two (2) weeks and three (3) days indemnity on account of sickness beginning on or about Jan. 9th.

"The papers submitted show that you were confined to the house for sixteen (16) days. Now it is a condition of your policy that disability resulting from sickness in order to constitute a claim, must require absolute confinement to the house for at least fourteen (14) consecutive days, with no indemnity allowed for the first seven (7) days. You are therefore entitled to nine (9) days' indemnity at $8.00 per week, amount-

ing to $10.29, in full settlement of which we enclose a draft for $6.29 and receipt for $4.00 for the next premium due.

Very truly yours,

"GEN. MANAGER.

"Encl."

The draft referred to contained the following caution: "This draft will not be paid if detached from the release, or if the release is not signed by the claimant," and the release mentioned was a release from all liability for the results of the sickness beginning on or about January 9, 1904.

The draft and release were returned to the company apparently properly executed; but upon the trial of the case the plaintiff testified that he was unable to read or write, and also that he told Lawrence Coffey (his brother-in-law) to sign the receipt, as he was not able to. Whereupon his counsel admitted "that that paper was fully signed; Mr. Coffey was authorized to do everything for him," and later re-examined the plaintiff upon the subject as follows: "Mr. Conway, you authorized Mr. Coffey to fill out these papers, did you not?" Ans. "Yes, sir." Afterwards the plaintiff was permitted to testify that he did not understand that the paper executed was a release from all liability for the sickness, but did understand that further payments were to be made thereon; however, when asked, in cross-examination, "From whom did you understand it?" he answered, "From myself;" and to the question, "You didn't understand it from anything the company told you," he replied: "No, sir; I did not." The plaintiff does not claim that the release was obtained by fraud, but that he and his agent, being ignorant men, did not understand the full effect and purport of it. It was through no fault of the defendant that, in the midst of an intelligent community, the illiterate plaintiff selected for his agent another ignorant man, and by admitting that the paper was fully signed by his duly authorized agent, he is bound by it to the same extent as though he had signed it. He can not be permitted to vary the terms of his written instrument by giving his understanding of the same not induced by the officers or agents of the defendant. Nor can

he at his option treat the amount paid him, in full settlement of the liability caused by his sickness, as a mere partial payment on account.   If; for any reason, he could be permitted to avoid his release and bring suit against the defendant under the policy for this sickness, it would only be after he had returned the money received by him, together with the receipt for the premium paid by the company at the time of the supposed settlement; in other words, after matters had been placed as nearly as might be *in statu quo*.

There is no good reason for avoiding the release, however; but if there was, and the plaintiff should be permitted to return the amounts received by him and placed to his credit, he would be no better off; for if he suffered from a cold, as he claims, he could only recover for one week's sickness.

. We therefore find that there was no waiver by the defendant; that the acceptance of an advance premium from the plaintiff with knowledge that he was suffering from tuberculosis did not render the defendant liable for any disability caused by that disease; that, although the policy furnished no indemnity against loss caused by tuberculosis, a tuberculous policy-holder of that form of policy is entitled while in good standing to indemnity against accidents and insurable disease, so that such receipt of premium was in itself no waiver; that the officers of the company did not waive any of its rights in the premises; that the plaintiff was suffering either from tuberculosis or a cold at the time of the sickness for which this suit was brought; that in either case the defendant has paid him more than he was entitled to under the policy; that the release is the release of the plaintiff, and is a complete bar to any suit that may be brought for his sickness which commenced January 9, 1904.

As these considerations are conclusive, it is unnecessary to consider the other question raised.

Case remanded to the Superior Court, with direction to enter judgment for the defendant.

*Peter C. Cannon*, for plaintiff.
*James A. Williams*, for defendant.